SPITZNAGEL ET AL., APPELLANTS, *v.* STATE BOARD OF
EDUCATION ET AL., APPELLEES.

[Cite as *Spitznagel v. State Bd. of Edn.*, 126 Ohio St.3d 174, 2010-Ohio-2715.]

*Public schools — Territory transfers pursuant to* R.C. 3311.24 *— State Board of
Education may consider a loss of revenue to be a sufficient demonstration
of a financial or educational detriment to the transferring school district
to prevent transfer — Judgment affirmed.*

(No. 2009-0015 — Submitted December 15, 2009 — Decided June 17, 2010.)

APPEAL from the Court of Appeals for Franklin County, No. 07AP-757,
2008-Ohio-5059 and 2008-Ohio-6080.

_____

LUNDBERG STRATTON, J.

**I**

{¶ 1} This case presents two questions for our review: (1) is it error to find that a territory transfer would cause significant detriment to the fiscal or educational operation of the transferring school district under Ohio Adm.Code 3301-89-02(B)(9) based only upon a showing of a potential loss of revenue, and (2) is it error to rely upon racial factors in a denial of a school transfer petition when the racial impact is found to be de minimis?

{¶ 2} We hold that evidence of a loss of revenue is a legally sufficient basis for the State Board of Education to determine that a territory transfer would cause some detriment to the fiscal or educational operation of a school district. As the determination of the first question is sufficient to decide the outcome of this case, we will not answer the second. Because we hold that the State Board of Education did not commit a legal error regarding the revenue loss and because the

factual determinations are not challenged in this appeal, we affirm the decision of the court of appeals.

**II**

**{¶ 3}** The Bedford City School District serves four communities, including the village of Walton Hills. In 2004, more than 75 percent of the registered voters in the village of Walton Hills, including appellant Brian Spitznagel, signed a petition requesting that the State Board of Education, an appellee, transfer Walton Hills from the Bedford City School District to the Cuyahoga Heights Local School District. See R.C. 3311.24. Both school districts submitted the required answers to questions from the Ohio Department of Education, and the board appointed a referee to conduct a hearing. See Ohio Adm.Code 3301-89-02(F). After the hearing, the referee issued his first report and recommendation, in which he recommended denying the transfer.

**{¶ 4}** In his report and recommendation, the referee considered the school districts' answers to the 17 questions posed to them and ten additional factors required under Ohio Adm.Code 3301-89-03(B). Of these factors, he found that four favored the transfer, seven disfavored the transfer, and 16 were either neutral or inapplicable.

**{¶ 5}** The factors found to disfavor the transfer were (1) the racial-isolation implications, (2) Bedford's loss of property valuation, which would be detrimental to its fiscal or educational operation, (3) Walton Hills's lack of isolation from Bedford, (4) the resulting slight percentage increase in the Bedford school district's black population, (5) the substantial upheaval that the transfer would cause due to Walton Hills's longstanding loyalties to Bedford, (6) the transfer of nearly $8,000,000 to Cuyahoga Heights from Bedford for only 45 students, which would not be commensurate with educational responsibilities assumed, and (7) the ineffective utilization of Bedford's facilities resulting from the transfer.

**{¶ 6}** The referee focused on the financial detriment to the Bedford school district as the main factor against the transfer. After the first hearing, he found that the transfer would deprive Bedford of at least $4,000,000 annually from real estate taxes in Walton Hills, even after a state-subsidy increase of over $3,500,000. The referee found it foreseeable that Bedford would "be immediately forced into enacting some * * * extreme fiscal measures to address the expected loss" and forced to "make significantly detrimental modifications to the educational programming" already in place. He found it "wholly foreseeable that the loss of the Walton Hills tax monies would cause the closing of facilities, reduced educational programming, and staff and faculty cutbacks, and other curtailments."

**{¶ 7}** The factors found to favor the transfer were that (1) both districts would have remaining pupil population and property valuation sufficient to maintain high school centers, (2) the transfer would not create a district with noncontiguous territory, (3) the district territories would be contiguous after transfer, and (4) the educational program of Bedford would not be impaired by the loss of 45 students.

**{¶ 8}** After receiving the report, the state board remanded the matter to the referee to consider what effect 2006 Am.Sub.H.B. No. 66 ("H.B. 66"), a personal property tax measure, would have on the transfer. Following a hearing, and posthearing briefing on the effects of 2006 Sub.S.B. No. 321, a bill designed in part to mitigate losses that school districts in a territory transfer would suffer as a result of H.B. 66, the referee produced a second report and recommendation, again recommending a denial of the transfer.

**{¶ 9}** The referee's second report explicitly adopted and incorporated the first report. After considering the effect that the two tax law modifications would have, the referee found that the parties disagreed as to the degree of financial loss Bedford would suffer. The petitioners' expert testified that the smallest amount

of revenue Bedford would lose over the first five years after the transfer was approximately $7,000,000. The petitioners had suggested five methods of revenue recovery, such as levying available millage, to mitigate some of the financial loss, but the referee found that all but two of the methods were uncertain. After considering the two mitigation techniques that were certain to take effect, the referee found that the transfer would "impose a significant detrimental financial impact" on Bedford.

{¶ 10} In December 2006, the board accepted the referee's second report and recommendation and denied the transfer. Appellants appealed this decision to the Franklin County Court of Common Pleas pursuant to R.C. 119.12. The trial court affirmed the decision, finding that the board's action was supported by reliable, probative, and substantive evidence.

{¶ 11} On appeal, the Franklin County Court of Appeals reversed and remanded, holding that a loss of funding without a specific finding as to how the loss of funds would be a significant detriment to the transferring school district is a legally insufficient basis to deny the transfer. *Spitznagel v. State Bd. of Edn.*, Franklin App. No. 07AP-757, 2008-Ohio-5059, ¶ 53-56. The court held that a loss of revenue alone is legally insufficient to show that a school's facilities would be ineffectively utilized. Id. at ¶ 68-70. The court based this holding partially on its decision in *Bartchy v. State Bd. of Edn.*, 170 Ohio App.3d 349, 2007-Ohio-300, 867 N.E.2d 440. The court of appeals also held that the board erred when it determined that a showing of a de minimis change in racial composition constituted racial isolation and applied that finding as a factor against the transfer.

{¶ 12} On the day the court of appeals decided this case, we announced our decision reversing the court of appeals' decision in *Bartchy. Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, 897 N.E.2d 1096. In view of our decision, the state board and the Bedford school district applied for

4

reconsideration. Upon reconsideration, the court of appeals held that our *Bartchy* opinion articulated a policy of deference to the board's decisions, allowing consideration of revenue loss as a factor against transfer without specific findings quantifying the harm. *Spitznagel v. State Bd. of Edn.*, Franklin App. No. 07AP-757, 2008-Ohio-6080, ¶ 7-8. The court of appeals also held that while it did not change its reasoning regarding the racial considerations, that error itself was not enough to merit reversal of the board's decision. Id. at ¶ 9. The court reversed its earlier decision and affirmed the trial court's affirmation of the board's decision. Id. at ¶ 11. We accepted appellants' discretionary appeal. *Spitznagel v. State Bd. of Edn.*, 121 Ohio St.3d 1449, 2009-Ohio-1820, 904 N.E.2d 900.

## III

{¶ 13} Ohio Adm.Code Chapter 3301-89 dictates the process by which the State Board of Education considers an application to transfer territory from one school district to another. The "primary consideration" in school territory transfer cases is "the present and ultimate good of the pupils concerned." Ohio Adm.Code 3301-89-01(F). Before rendering its decision, the board is to ask, "Will the loss of either pupils or valuation be detrimental to the fiscal or educational operation of the relinquishing school district?" Ohio Adm.Code 3301-89-02(B)(9). Appellants would have us hold that evidence of a potential loss of revenue caused by a territory transfer, without more, is legally insufficient to show that the transfer would be detrimental to the fiscal or educational operation of the transferring school district. They cite *Crowe v. State Bd. of Edn.* (Oct. 26, 1999), Franklin App. No. 99AP-78, 1999 WL 969708, for that proposition. We hold that the state board may consider a loss of revenue to be a sufficient demonstration of a financial or educational detriment to the transferring school district. The question of whether, or how much, it should weigh against the transfer is dependent upon the facts and evidence in each case.

{¶ 14} Under R.C. 119.12, when a decision of a state board is appealed, a court of common pleas must decide whether the board's order was "supported by reliable, probative, and substantial evidence and is in accordance with law." The court of appeals is even more limited in its review and can overturn findings of fact " 'only if the trial court has abused its discretion.' " *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.* (1992), 63 Ohio St.3d 705, 707, 590 N.E.2d 1240, quoting *Lorain Cty. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260-261, 533 N.E.2d 264. A court of appeals has plenary review when deciding whether the decision is in accordance with the law. *Bartchy*, 120 Ohio St.3d 205, 2008-Ohio-4826, 897 N.E.2d 1096, at ¶ 43. A majority of justices in *Bartchy* reinforced this standard of deference. The plurality opinion stated that "the standards of review in the common pleas court and the court of appeals are meant to ensure proper deference to the state board," id. at ¶ 95, while the concurring opinion found error because "the court of appeals substituted its judgment for that of the trial court on issues of fact." Id. at ¶ 98 (Lanzinger, J., concurring in syllabus and judgment only).

{¶ 15} In *Bartchy*, we affirmed the decision of the board in which a revenue loss was considered a factor against a territory transfer without specific findings regarding the nature of the detriment. Id. at ¶ 84. In *Bartchy*, the transferring district would have lost assessed property valuation worth potentially $373,840. Id. at ¶ 58. We agreed that the financial loss to the transferring district would "not be significant," and while the referee in *Bartchy* found only that the revenue loss would be detrimental to the school district in "some way," the plurality opinion held that he "was within his authority" when he did so and that he "was not required to ignore these concerns." Id. at ¶ 82-83.

{¶ 16} The referee in this case was also within his authority to consider the financial loss to be detrimental to the fiscal or educational operation of Bedford, especially when the loss in this case is significantly higher than the loss

in *Bartchy* and the evidence of the impact of the loss is stronger. In *Bartchy*, while the loss in *valuation* was assessed at $373,840, here the loss of actual *revenue* was potentially in the millions. And whereas the school districts in cases cited by appellant did not specifically describe the harm possibly resulting from a loss of revenue, see, e.g., *Crowe,* Franklin App. No. 99AP-78, 1999 WL 969708, * 2, the record here includes evidence tending to prove the harm that could occur if the district lost revenue. In his reports, the referee found it "wholly foreseeable" that the revenue loss would result in "the closing of facilities, reduced educational programming, and staff and faculty cutbacks, and other curtailments damaging the district students." This conclusion was supported by the testimony of the treasurer of the Bedford district, who explained the school's financial reports at the hearing and discussed the impact that a loss of revenue would have on programs such as summer school, extracurricular activities, transportation, special education, and teacher retention. Although the expected revenue loss was viewed as less after the legislative changes, the evidence does demonstrate the impact a financial loss could have on Bedford. With evidence of significant possible losses in revenue and their possible effects, the board did not err when it considered the loss as causing a financial or educational detriment that factored against the transfer.

{¶ 17} Appellants also argue that the referee erred by not considering the mitigation techniques that could reduce the financial loss suffered by Bedford. This argument is without merit, as the referee did consider two of the mitigation techniques: the savings from the loss of students and the change in tax law. He declined to apply the techniques that were not legally binding. The referee was within his authority to determine that some of the techniques should not have been considered in his recommendation, and we defer to that decision because it appears that evidence supports the referee's conclusions.

**{¶ 18}** Our holding here will not render school-territory-transfer petitions meaningless, as argued by appellants, because courts will still be able to review the state board's decisions regarding revenue loss under the abuse-of-discretion standard. Even if a loss in revenue is considered a factor against transfer, the overall decision must be supported by the evidence. The *Bartchy* plurality affirmed the board's rejection of the requested transfer based on the small revenue loss only because there was so little evidence presented in favor of the transfer. See *Bartchy*, 120 Ohio St.3d 205, 2008-Ohio-4826, 897 N.E.2d 1096, at ¶ 84. In a different case, after considering all of the evidence, a court may find that the state board weighed a showing of a revenue loss too heavily against a transfer. See id. See also *Residents of Baldwin Rd. v. Ohio Dept. of Edn.*, Franklin App. No. 02AP-257, 2002-Ohio-5522, at ¶ 19 (the state board depended too heavily on small revenue loss and ignored extensive and persuasive evidence in favor of transfer). A state board could also determine that a loss of revenue is so insubstantial to the operation of the district that it will not consider it as a factor against transfer. In *Levey v. State Bd. of Edn.* (Feb. 28, 1995), Franklin App. No. 94APE08-1125, 1995 WL 89703, * 4, the Tenth District Court of Appeals noted that although the referee had considered the loss of revenue, he had decided that it was not " 'a factor significant enough to stand in the way of the proposed transfer.' " This holding creates the correct balance between giving deference to the state board and giving school territory transfer petitions fair consideration upon appeal.

**{¶ 19}** Questions regarding the weight given to the revenue loss in the overall balancing of factors and whether the petitioners met their burden are not before us in this case. The only question before us concerning the revenue loss is the legal sufficiency of the decision regarding the single factor in Ohio Adm.Code 3301-89-02(B)(9).

**IV**

**{¶ 20}** The Walton Hills residents also assert that the state board erred in applying racial factors against the transfer, because the transfer would have only a de minimis impact on the affected school districts' racial composition. The significant revenue loss was the primary negative factor against the transfer, and little weight was given to the finding of de minimis racial impact. If error occurred, it does not affect the outcome of this case, rendering it harmless. Therefore, we need not decide this question and its constitutional implications, as it is not necessary to do so. *See Hall China Co. v. Pub. Util. Comm.* (1977), 50 Ohio St.2d 206, 210, 4 O.O.3d 390, 364 N.E.2d 852.

## V

**{¶ 21}** For the foregoing reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR and LANZINGER, JJ., concur.

PFEIFER, J., concurs in judgment only.

O'DONNELL and CUPP, JJ., dissent.

BROWN, C.J., not participating.

_____

**O'DONNELL, J., dissenting.**

**{¶ 22}** Respectfully, I dissent.

**{¶ 23}** This case presents the issue of whether the state board of education may deny a petition to transfer territory from one school district to another based solely on a loss of revenue to the relinquishing (or transferring) school district. The lead opinion resolves this issue by concluding that "the state board may consider a loss of revenue to be a sufficient demonstration of a financial or educational detriment to the transferring school district." However, a relinquishing district will always suffer a loss of some revenue when there is a transfer of territory from one school district to another. Further, the evidence here

is insufficient to support the board's finding that the loss of revenue will impair the fiscal or educational operations of the relinquishing district, and the state board compounded this error when it found that a de minimis impact on racial isolation also weighed against the transfer.

## Loss of Revenue

{¶ 24} Ohio Adm.Code 3301-89-02(B)(9) directs the board to consider this question: "Will the loss of either pupils or valuation be detrimental to the fiscal or educational operation of the relinquishing school district?" Notably, the relevant consideration is not whether there will be a loss of pupils or a loss of valuation; rather the regulation directs the board to evaluate whether those losses will have a detrimental impact on the fiscal or educational *operation* of the relinquishing district. Thus, Ohio Adm.Code 3301-89-02(B)(9) expressly recognizes that a loss of students and revenue will occur in *every* territory transfer and that those losses, per se, are insufficient to support the board's denial of a transfer when there is no resulting detriment to the operations of the school district. Rather, the school board must consider the impact of the revenue loss on the relinquishing district.

{¶ 25} The question, then, is whether any reasonably foreseeable loss of revenue will be "detrimental to the fiscal or educational operation" of the relinquishing school district. If that loss of revenue, no matter the amount, does not have a detrimental impact on the fiscal or educational operation of the district, the state board may not rely on it to deny a petition to transfer territory.

{¶ 26} In this case, insufficient evidence supports the state board's finding that the loss of revenue will be detrimental to the fiscal or educational operation of the Bedford City School District. At the initial hearing, Mary Ann Nowak, the district treasurer, testified that the expected loss of revenue would affect school programs, but, as the lead opinion acknowledges, she did not have an accurate projection of the amount that the school district would lose as a result of the

transfer because "the expected revenue loss was viewed as less after the legislative changes." Lead opinion at ¶ 16. The treasurer believed that the district would lose almost $4,000,000 each year out of an annual budget of almost $40,500,000 for 2004. Notably, Lowell Davis, a former school district treasurer and Spitznagel's expert, testified that a shortfall in a school district's budget of ten percent would cause the state board to place the district on fiscal watch. After hearing the evidence, the referee found in his first report that the loss of revenue would cause a detrimental impact on the Bedford City School District.

{¶ 27} The state board remanded the matter for the referee to consider what effect 2006 Am.Sub.H.B. No. 66 ("H.B. 66"), which phases out the tangible personal property tax, would have on the proposed transfer. The referee considered the effect of H.B. 66 as well as 2006 Sub.S.B. No. 321 ("S.B. 321"), which mitigates losses to the relinquishing school district as a result of the passage of H.B. 66. Relying on the testimony of Spitznagel's expert, Todd Puster, the referee recognized that the passage of H.B. 66 and S.B. 321 could mean that the Bedford City School District would lose as little as $1,400,000 per year over the next five years. Further, the referee accepted the expert's opinion that the school district could save an additional $600,000 by no longer having to provide educational services to students from Walton Hills. Therefore, based on the revised projections presented at the second hearing, the revenue loss to the Bedford City School District amounts to less than two percent of the district's $44,900,000 annual budget for 2005, but the referee received no evidence that a two percent loss of revenue would detrimentally affect the Bedford City School District.

{¶ 28} The referee thus did not and could not make specific factual findings regarding whether the revised projections of financial loss would impair the fiscal or educational operation of the Bedford City School District. Instead, the referee merely assumed that the same detriment would result from a smaller

revenue loss. However, testimony that a ten percent loss of revenue will cause a detriment to the school district does not prove that the same detriment results from a two percent loss of revenue.

{¶ 29} As the lead opinion acknowledges, at best, the evidence before the state board represented only "evidence of significant *possible* losses in revenue and their *possible* effects." (Emphasis added.) Lead opinion at ¶ 16. In my view, speculation as to the potential impact of a potential loss of revenue does not support a decision to deny a petition for a school district transfer.

{¶ 30} Accordingly, my view is that the state board may not rely on evidence of a mere loss of revenue to deny a petition for transfer of territory when there is insufficient evidence that the revenue loss would be detrimental to the fiscal or educational operation of the relinquishing school district.

### Racial Isolation

{¶ 31} Ohio Adm.Code 3301-89-02(B)(2) requires the state board to consider the following: "Are there racial isolation implications?" and "If approved, would the transfer result in an increase in the percentage of minority pupils in the relinquishing district?" The referee found that any resulting racial isolation would have a de minimis impact on students. Nonetheless, he concluded that the resulting racial isolation constituted a factor weighing against the territory transfer.

{¶ 32} Also, Ohio Adm.Code 3301-89-03(B)(5) provides that "[t]he transfer shall not cause, preserve, or increase racial isolation." In evaluating the impact of the transfer on racial isolation pursuant to this regulation, the referee found that "[u]sing the numbers to judge, the determination must be made that a transfer would *ever so slightly change* the racial composition in the effected [sic] districts, and, as such, this factor disfavors the transfer." (Emphasis added.)

{¶ 33} The majority does not reach the issue of whether the state board erred in weighing racial factors against the transfer when any resulting racial

12

isolation would be negligible. However, the error of the state board in finding that a de minimis impact on racial isolation weighs against the transfer compounds its misapplication of the law in finding a detrimental impact on the fiscal or educational operation of the relinquishing district from the mere loss of revenue. Accordingly, I disagree with the lead opinion that any error would have been harmless.

{¶ 34} For these reasons, I would reverse the judgment of the court of appeals and on these facts order the state board to grant the petition to transfer.

CUPP, J., concurs in the foregoing opinion.

_____

Roetzel & Andress, L.P.A., Stephen W. Funk, and David R. Harbarger, for appellants.

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Alexandra T. Schimmer, Chief Deputy Solicitor General, and Todd R. Marti, Assistant Attorney General, for appellee State Board of Education.

Squire, Sanders & Dempsey, L.L.P., D. Lewis Clark Jr., and Meghan E. Hill, for appellee Bedford City School District.

Chester, Willcox & Saxbe, L.L.P., and Donald C. Brey, urging affirmance for amici curiae city of Bedford, city of Bedford Heights, and village of Oakwood.

Scott, Scriven & Wahoff, L.L.P., and Patrick J. Schmitz, urging affirmance for amicus curiae Ohio School Boards Association.

Janice St. John, urging reversal for amici curiae Edward Thellmann, Karen Mellon, Rita Charsanko, Dean Penix, and Joanne Podojil, members of the Walton Hill Education Network.

_____