[Cite as *Robinson v. Ohio Dept. of Edn.*, 2012-Ohio-1982.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

CRAIG ROBINSON                                    :

      Plaintiff-Appellant                     :          C.A. CASE NO.    24808

v.                                                :          T.C. NO.    11CV1321

OHIO DEPARTMENT OF EDUCATION          :          (Civil appeal from
                                                           Common Pleas Court)

      Defendant-Appellee                      :

                                                  :

     . . . . . . . . . .

**O P I N I O N**

Rendered on the ____4th____ day of ____May____, 2012.

. . . . . . . . . .

JOHN R. FOLKERTH, JR., Atty. Reg. No. 0016366, 109 North Main Street, 500 Performance Place, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellant

JENNIFER BONDURANT, Atty. Reg. No. 0079384, Assistant Attorney General, Education Section, 30 East Broad Street, 16th Floor, Columbus, Ohio 43215
      Attorney for Defendant-Appellee

. . . . . . . . . .

FROELICH, J.

      **{¶ 1}** Craig Robinson appeals from a judgment of the Montgomery County

Court of Common Pleas, which affirmed the resolution of the Ohio State Board of Education to suspend Robinson's teaching license for one year, with all but 60 days suspended, to be served in the summer months. For the following reasons, the trial court's judgment will be affirmed.

I.

{¶ 2} The underlying facts, as found by the Ohio Board of Education hearing officer, are as follows:

{¶ 3} Craig Robinson, a well-respected high school science teacher with 21 years of experience, is employed at Longfellow Alternative School, a Dayton Public School. Robinson holds a five-year professional adolescence to young adult teaching license, which was issued in 2009.

{¶ 4} During his planning period on June 8, 2009, Robinson received and viewed an email containing four pictures of a woman posing. In three of the pictures, the woman was wearing a bikini; the fourth picture showed her bare breasts and pubic area. (The images were attached to a message from a fraternity brother of Robinson regarding the nursing care of another fraternity brother who had undergone surgery.) Later that day, Robinson accessed the email on the classroom computer of another teacher, Billy Brooks, in order to show the pictures to Brooks. There were students in Brooks's classroom at the time, but there was no evidence that the students saw or were intended to see the pictures. Brooks believed that the fourth image was pornographic, and he reported what occurred to Bettylene Mulligan, principal of Longfellow Alternative School. Mulligan investigated and reported the incident to her superiors at Dayton Public Schools.

**{¶ 5}** Robinson was placed on administrative leave on or about August 5, 2009. After a hearing on August 27, 2009, Robinson was suspended without pay for a period of five days. On September 25, 2009, Dayton Public Schools filed an educator misconduct reporting form with the Ohio Department of Education.

**{¶ 6}** Following an investigation, the Ohio Department of Education notified Robinson that the State Board of Education intended to determine whether to limit, suspend, or revoke his teaching license. Robinson requested a hearing on the matter, which ultimately occurred on September 14, 2010. Mulligan and Robinson testified at the hearing. Robinson recognized that the email's images were inappropriate for students to view, but he asserted that his conduct was not "conduct unbecoming an educator."

**{¶ 7}** The hearing officer considered R.C. 3319.31(B), Ohio Adm.Code 3301-73-21, and the Licensure Code of Professional Conduct for Ohio Educators and concluded that "Mr. Robinson violated this standard, along with the aforementioned applicable law, through his use of school e-mail, school computers, and the school network to view lewd photos, one including nudity, during the school day and with students in the classroom." The hearing officer considered Robinson's "conduct and work activity before the misconduct, his lack of previous misconduct or discipline, and the five day suspension already imposed by the Dayton Public Schools" to be mitigating factors. The officer considered Robinson's belief that his conduct was not inappropriate for an educator to be an aggravating factor.

**{¶ 8}** The hearing officer concluded that Robinson's conduct constituted conduct unbecoming a teacher, in violation of R.C. 3319.31(B)(1). The officer further concluded

that there was a nexus between Robinson's conduct and his performance as a teacher. The officer recommended that Robinson's license be suspended for one year, with all but 60 days suspended, to be served in the summer months.

{¶ 9} Robinson filed objections to the hearing officer's report and recommendation. On January 2011, the Ohio State Board of Education issued a resolution rejecting Robinson's objections and accepting the hearing officer's recommendations. Robinson's one-year suspension was to begin on January 11, 2011, and the suspension was to be served from June 15, 2011 through August 13, 2011.

{¶ 10} Robinson appealed the Board's order to the Montgomery County Court of Common Pleas, pursuant to R.C. Chapter 119. The trial court affirmed the Board's resolution. Robinson appeals from the trial court's decision, raising one assignment of error.

II.

{¶ 11} Robinson's sole assignment of error states:

THE TRIAL COURT ERRED IN AFFIRMING THE RESOLUTION OF THE OHIO STATE BOARD OF EDUCATION AS THE RESOLUTION IS NOT SUPPORTED BY RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE AND IS NOT SUPPORTED BY LAW.

{¶ 12} Robinson claims that the trial court erred in affirming the Ohio State Board of Education's resolution. He argues that his conduct did not violate professional teaching standards, that the hearing officer's conclusions were contrary to the evidence, and that his suspension was contrary to law.

{¶ 13} "Under R.C. 119.12, when a decision of a state board is appealed, a court of common pleas must decide whether the board's order was 'supported by reliable, probative, and substantial evidence and is in accordance with law.'" *Spitznagel v. State Bd. of Edn.*, 126 Ohio St.3d 174, 2010-Ohio-2715, 931 N.E.2d 1061, ¶ 14, quoting R.C. 119.12. The trial court must give deference to the board's resolution of factual conflicts unless they are clearly unsupportable. *Jackson v. Ohio Dept. of Rehab. & Corr.,* 2d Dist. Montgomery No. 22580, 2009-Ohio-896, ¶ 18.

{¶ 14} An appellate court's review is more limited than that of the trial court. In reviewing the trial court's determination on whether the order was supported by reliable, probative, and substantial evidence, the appellate court is limited to determining whether the trial court abused its discretion. *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707, 590 N.E.2d 1240 (1992), citing *Lorain City Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261, 533 N.E.2d 264 (1988). An abuse of discretion means that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 15} When reviewing whether the Board's, or the trial court's, order was in accordance with the law, however, an appellate court's review is de novo. *Sptiznagel* at ¶ 14.

*A. Professional Teaching Standards*

{¶ 16} Robinson first disputes the Board's and the trial court's conclusion that his conduct violated R.C. 3319.31(B)(1). That statute permits the state board of education to "suspend, revoke, or limit a license that has been issued to any person" for "[e]ngaging in an

immoral act, incompetence, negligence, or conduct that is unbecoming to the * * * person's position." The Ohio Administrative Code sets forth factors for the state board of education to consider when evaluating "conduct unbecoming" under R.C. 3319.31(B)(1). Ohio Adm.Code 3301-73-21(A). They include "[c]rimes or misconduct involving the school community, school funds, or school equipment/property" and "[a]ny other crimes or misconduct that negatively reflect upon the teaching profession." Ohio Adm.Code 3301-73-21(A)(5), (8).

{¶ 17} An uncodified portion of 2007 H 190, which amended R.C. 3319.31 effective November 14, 2007, required the Educator Standards Board to recommend to the State Board of Education a code of conduct for educators. The code of conduct was to address persons who are licensed by the State Board of Education and to include recommendations regarding conduct that is inappropriate for educators and suggested disciplinary actions for each type of misconduct.

{¶ 18} The Licensure Code of Professional Conduct for Ohio Educators was adopted by the State Board of Education in March 2008. It provides "a guide for conduct in situations that have professional implications for all individuals licensed by the State Board of Education," and sets forth eight principles of behavior, including:

**1. Professional Behavior**

**Educators shall behave as professionals realizing that their actions reflect directly on the status and substance of the education profession.**

*An educator serves as a positive role model to both students and adults and is*

*responsible for preserving the dignity and integrity of the teaching profession*

*and for practicing the profession according to the highest ethical standards.*

**Conduct unbecoming** to the profession includes, but is not limited to, the following actions:

\* \* \*

g)      Using technology to intentionally host or post improper or inappropriate material that could reasonably be accessed by the school community.    (Emphasis in original.)

{¶ 19}   The presumptive range of disciplinary action for a violation of Principle 1 (for acts other than violations of a testing procedure and failure to comply with required background checks) is "Letter of admonishment up to revocation/denial of a license for other acts unbecoming to the professional conduct of educators."

{¶ 20}   Robinson argues that there was no evidence that he "hosted or posted improper or inappropriate material" when he showed the email, which he understood to be a joke, to Brooks.  Robinson argues that the trial court applied "its own, unique definition of posting" to include displaying a picture on a computer.

{¶ 21}   We find no reversible error in the trial court's conclusion that Robinson's actions constituted conduct unbecoming an educator.  Robinson viewed a personal email with four attached images, three of which showed a young woman in a bikini and one of which showed the same woman exposing her breasts and pubic area.  Robinson accessed that email in Brooks's classroom during school hours and with students in the classroom, and he displayed the images to Brooks.  Robinson does not contest that the images were inappropriate for school, and we agree that the images, particularly the fourth image, was

inappropriate as school material.

{¶ 22} Robinson did not upload the material to a server that could be independently accessed by other members of the school community. However, Principle 1 is not limited to strict definitions of the examples provided (i.e., hosting and posting), and the intent of subpart g appears to be that educators should not use technology to display improper or inappropriate material where they could be reasonably accessed by the school community. After viewing the email himself, Robinson chose to again access the email on a school computer and the school network and to display inappropriate images to a fellow teacher, who is a member of the school community. We find no fault with the conclusion that Robinson's actions violated Principle 1 of the Licensure Code of Professional Conduct for School Educators and R.C. 3319.31(B)(1).

### B. Reliable, Probative, and Substantial Evidence

{¶ 23} Robinson next argues that the trial court "failed to recognize the Hearing Officer made findings of fact contrary to the evidence, misstated Mr. Robinson's testimony, considered evidence that is irrelevant and prejudicial, and refused to consider mitigating factors relevant to making a recommendation." Robinson thus asserts that the Board's resolution was not supported by reliable, probative, and substantial evidence.

{¶ 24} First, Robinson emphasizes that the email, which was sent by a fraternity brother, was a joke, and he argues the hearing officer "distorted the evidence" when she found that Robinson accessed the email to "show the pictures to Mr. Brooks." Robinson testified that the email's images were intended by the sender and understood by Robinson as a joke, and that he intended to share the joke with Brooks. Brooks did not testify, and there

is conflicting evidence as to whether Brooks perceived the images as a joke; it is not disputed that Brooks reported the incident to his principal.

{¶ 25} Regardless, the evidence is clear that Robinson accessed the email to show the message and images to Brooks. Robinson testified that he went to Brooks's classroom and said, "Look, Brooks, I got something I want you to see. I want you to see something." Robinson stated that he then went onto Brooks's computer, logged out of Brooks's email account, logged onto his own email account, went into the email trash folder, retrieved the email, and "showed him [Brooks] the pictures and told him the joke." The hearing officer's conclusion that Robinson accessed the email to show the pictures to Brooks is not a distortion of the evidence, and the trial court did not abuse its discretion in rejecting Robinson's argument.

{¶ 26} Second, Robinson challenges the hearing officer's finding that Brooks, who did not testify, believed the fourth picture to be pornographic. Robinson argued to the trial court that this opinion was irrelevant. The trial court noted that the rules of evidence are less strict in an administrative setting and that Brooks's opinion was elicited from Mulligan when she articulated what prompted her investigation. Robinson claims that the trial court "missed the point that the Hearing Officer needed to exaggerate the photographs as pornographic to justify a finding of misconduct."

{¶ 27} In finding that Robinson's conduct constituted conduct unbecoming a teacher, the hearing officer found that Robinson used his school email, school computers, and school network to view "lewd photos, one including nudity," during the school day and with students in the classroom. The nature of the photos was readily apparent from the

exhibits presented to the hearing officer, and the officer did not need to rely on Brooks's perception of the photos. A finding that the photos did or did not constitute "pornography" was not necessary for a determination on whether Robinson's actions constituted conduct unbecoming a teacher. Moreover, as stated by the trial court, Brooks's opinion was mentioned by the hearing officer when explaining how the investigation by the principal began. The hearing officer's report did not exaggerate the evidence, and we agree with the trial court that the reference to Brooks's opinion does not invalidate the Board's determination.

{¶ 28} Third, Robinson takes issue with the hearing officer's conclusion that "Mr. Robinson's belief that his conduct was not in any way inappropriate for an educator [is] an aggravating factor." Robinson emphasizes that he testified that he realized his behavior was inappropriate and that it would have been inappropriate for students to view the photographs. He further argues that there is a difference between inappropriate behavior and conduct unbecoming a teacher.

{¶ 29} Ohio Adm.Code 3301-73-21(B) permits the Board to take the following mitigating and aggravating factors, as applicable and appropriate, into consideration when determining a final action under R.C. 3319.31(B)(1):

(1) The nature and seriousness of the crime or misconduct;

(2) The extent of the person's past criminal activity or misconduct;

(3) The age of the person when the crime or misconduct was committed;

(4) The amount of time that has elapsed since the person's last criminal activity or misconduct;

(5) The conduct and work activity of the person before and after the criminal activity or misconduct;

(6) Whether the educator has completed the terms of his/her probation or deferred adjudication;

(7) Evidence of rehabilitation * * *;

(8) Whether the educator is amenable to rehabilitation * * *;

(9) Whether the person fully disclosed the crime or misconduct to the state board or the employing school district;

(10) Whether licensure will negatively impact the health, safety, or welfare of the school community and/or statewide education community;

(11) Whether the educator has previously been disciplined by the state board of education or any other licensing entity, including, but not limited to, out-of-state licensing entities;

(12) Whether the school district or educational entity imposed any penalties, sanctions, or other conditions addressing the educator's professional conduct;

(13) Whether the educator has been employed in any capacity within a school district or educational entity after having a license, certificate, or permit revoked; and

(14) Any other relevant factor.

**{¶ 30}** At the hearing, Robinson acknowledged that he had violated the school district's acceptable use policy by using school computers for personal business. Robinson did not agree, however, that his conduct violated the statute prohibiting conduct unbecoming

an educator. When asked if he recognized that his "sharing that joke with Mr. Brooks" violated the statute, Robinson responded,

> No. If I had – if it was a salacious attempt in showing him those pictures, if I had not even took the precautions of not letting kids views the pictures, then I would say, yes. I realize that my behavior, again, was inappropriate. It was definitely inappropriate. There's no doubt about that. And if [I] could go back to that day, he never would have seen those pictures.

{¶ 31} Robinson was then asked if he was aware of any professional guidance that identifies what teachers are allowed to look at on school computers. Robinson answered,

> No. I am now. I'm sorry. Let me rephrase that. I do believe that – I mean, common sense would tell me hard-core pornography would be an issue. But she was dressed in three of those pictures and they wasn't showing every, everything. And the last picture, I didn't see it as being pornographic.

{¶ 32} Although Robinson acknowledged that he should not have used a school computer to view personal emails, his testimony could reasonably be construed as expressing a lack of awareness of the import of his actions. His conduct constituted more than the use of the school network and school computers to view an innocuous personal email. Rather, he displayed three images of a scantily clad woman and one image where the woman's breasts and pubic area were exposed to another teacher during school hours while students were in the classroom. The images were sexual in nature, and the fourth image, in particular, was reasonably described by the hearing officer as "lewd." Robinson, however,

continued to maintain that he merely shared a joke with Brooks. The hearing officer did not act unreasonably in considering Robinson's minimization of his actions to be an aggravating factor.

{¶ 33} Fourth, Robinson asserts that the hearing officer failed to properly consider as a mitigating factor that he has continued to teach since the disciplinary action and that his performance evaluations demonstrate consistently high performance. As noted by the trial court, the hearing officer found that Robinson is a well-respected science teacher and that he served a five-day unpaid suspension for Dayton Public Schools. The hearing officer further considered "Robinson's conduct and work activity before the misconduct" and "his lack of previous misconduct or discipline" as mitigating factors. The hearing officer's report and recommendation noted that Robinson had 21 years of experience as a teacher. Although Robinson's performance evaluations were not expressly mentioned, they are encompassed by the hearing officer's references to Robinson's years of experience, his reputation as a "well-respected" teacher, and his "conduct and work activity before the misconduct," which had not included any prior misconduct or discipline. The Board's resolution is not undermined by the lack of an express reference to Robinson's performance evaluations since the misconduct.

{¶ 34} Fifth, Robinson claims that the hearing officer erred in concluding that a nexus exists between Robinson's conduct and his performance as a teacher. Robinson relies on *Freisthler v. State Board of Education*, 3d Dist. Allen No. 1-02-36, 2002-Ohio-4941, which adopted the position that "when evaluating whether conduct is 'unbecoming' a teacher[, * * *] the board must show some nexus between the conduct that

the individual is accused of and the individual's performance as a teacher." *Id*. at ¶ 20. *Freisthler* adopted several criteria to evaluate whether a teacher is unfit to teach, including

> [the] likelihood that the conduct may have adversely affected students or fellow teachers, the degree of such adversity anticipated, the proximity or remoteness in time of the conduct, the type of teaching certificate held by the party involved, the extenuation or aggravating circumstances, if any, surrounding the conduct, the praiseworthiness or blameworthiness of the motives resulting in the conduct, the likelihood of the recurrence of the questioned conduct, and the extent to which disciplinary action may inflict an adverse impact or chilling affect upon the constitutional rights of the teacher involved or other teachers. *Freisthler* at ¶ 22, quoting *Morrison v. State Bd. of Edn.*, 1 Cal.3d 214, 239, 82 Cal.Rptr. 175, 461 P.2d 375 (1969) (footnotes omitted).

{¶ 35} In addition to the Third District, the Fifth and Eighth Districts have also expressly required a nexus between the educator's conduct and the ability to teach or administrate in order for the Board of Education to act on the educator's license. *See, e.g.*, *Hoffman v. State Bd. of Edn.*, 145 Ohio App.3d 392, 763 N.E.2d 210 (8th Dist.2001); *Johnson v. State Bd. of Edn.*, 5th Dist. Stark No. CA-8019, 1990 WL 62988 (May 14, 1990). *See, also, Bertolini v. Whitehall City Sch. Dist. Bd. of Edn.*, 139 Ohio App.3d 595, 744 N.E.2d 1245 (10th Dist.2000) (requiring a private act to have a serious impact on the teacher's professional duties in order to justify termination of teacher's contract). We note that all of the Third, Fifth, and Eighth District cases involved conduct that pre-dated the

2007 amendment to R.C. 3319.31 requiring the creation of a code of conduct for teachers.

{¶ 36} The Eighth and Fifth Districts have found that a nexus exists when the educator's conduct impacts the individual's professional life. For example, in *Sayers v. Ohio State Bd. of Edn.*, 8th Dist. Cuyahoga No. 66578, 1994 WL 676869 (Dec. 1, 1994), a physical education teacher entered a guilty plea to importuning based on inappropriate physical contact with elementary school students. The appellate court found a nexus existed, noting that the teacher's duties required him to be in close physical contact with children before, during, and after school, and that many of those children would have to dress and undress for instruction or competition not far from the teacher's supervision. In *Hoffman*, the Eighth District affirmed the revocation of a teacher's license based on his engaging in public indecency at an adult book store, even though his conduct did not occur on school grounds, during school hours, or involve students. The court concluded that the teacher "established the nexus between his conduct and his teaching duties when he solicited students to write letters on his behalf." *Hoffman*, 145 Ohio App.3d at 396. In *Johnson*, the Fifth District concluded that there was a nexus between an elementary school principal's public indecency in a public restroom along a highway and the principal's job performance when there was evidence that the behavior "jeopardized his role model and leadership abilities."

{¶ 37} *Freisthler* involved a teacher who challenged the State Board of Education's decision not to renew his teaching license based on a conviction for persistent disorderly conduct that had occurred five years previously. The disorderly conduct conviction was based on Freisthler's solicitation and inappropriate touching of an

undercover officer in a park. In finding no nexus between Freisthler's conduct and his ability to teach, the Third District emphasized that his conviction was not publicized, that there was no evidence that students were made aware of the matter, that teachers and administrators who were informed of the conduct testified that Freisthler was an exceptional teacher, and that Freisthler had taught for seven years after his conviction without incident or complaint.

{¶ 38} This court has not addressed whether a nexus must exist between the conduct and the individual's performance as an educator, and we need not decide that issue in this case. Even if we were to follow *Freisthler* and the other cases requiring a nexus, we would find no error in the conclusion that a nexus existed. Robinson's conduct occurred in a classroom during school hours while students were present in the room. Although there was no evidence that students saw the photographs and Robinson testified that he took steps to ensure that students would not see the pictures, the fact that he displayed the pictures to another teacher during school hours while students were engaged in class work in the room reflects on Robinson's performance as a teacher and affected his relationships within the school community. We find no fault with the hearing officer's and the trial court's conclusion that a nexus existed between Robinson's conduct and his performance as a teacher, if that were needed.

### C. Lawfulness of Suspension

{¶ 39} Robinson asserts that his suspension is contrary to law, because his actions did not constitute conduct unbecoming an educator, there was no nexus between the alleged misconduct and Robinson's performance as a teacher, and no public purpose would be

served by upholding the Board's suspension of his license. Robinson further claims that Board's decision to suspend him for sharing a private communication with a fellow educator is unconstitutional.

**{¶ 40}** As stated above, we find no error in the conclusions that Robinson's conduct constituted conduct unbecoming an educator, in violation of R.C. 3319.31(B)(1), and to the extent that a nexus need be shown between his conduct and his teaching performance, that such a nexus exists. The record contains reliable, probative, and substantial evidence to support the Board's resolution, and the trial court did not abuse its discretion in so finding. Moreover, the suspension of Robinson's license was within the range of discipline for his violation of Principle 1 of the Licensure Code.

**{¶ 41}** As for Robinson's claim that his sharing of a joke with another teacher was constitutionally protected, we disagree. Robinson was not punished merely because he privately shared a joke with another teacher. Rather, his conduct was deemed conduct unbecoming an educator because he showed inappropriate photos, including a sexual image of a nude woman, to another teacher using school equipment, during school hours, and while students were present in the classroom. The fact that no students actually viewed the photos, particularly the fourth photo, likely mitigated against a more severe punishment.

**{¶ 42}** The Board's suspension of Robinson's license for one year, with all but 60 days suspended, to be served during summer months, was not contrary to law, and the trial court did not abuse its discretion in affirming the Board's decision.

**{¶ 43}** Robinson's assignment of error is overruled.

**{¶ 44}** The trial court's judgment will be affirmed.

. . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

John R. Folkerth, Jr.
Jennifer Bondurant
Hon. Michael L. Tucker