[Cite as *Lucas v. Ohio State Bd. of Edn.*, 2020-Ohio-2738.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Megan E. Lucas et al.,                        :

      Appellants-Appellees,          :

                                  No. 19AP-463

v.                                            :          (C.P.C. No. 19CV-1945)

[Ohio State Board of Education, and]          :          (ACCELERATED CALENDAR)
Jefferson Township Local School
District Board of Education,                  :

      Intervening Appellee-Appellant.    :

D E C I S I O N

Rendered on April 30, 2020

**On brief:** *Coolidge Wall Co., L.P.A.*, *Merle F. Wilberding*, and *Christopher R. Conard*, for appellants-appellees. **Argued:** *Christopher R. Conard.*

**On brief:** *Subashi, Wildermuth & Justice*, and *Tabitha Justice*, for intervening appellee-appellant. **Argued:** *Tabitha Justice.*

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} The record of this case reflects that schools under the immediate aegis of the Jefferson Township Local School District Board of Education had not been faring well when a group of dissatisfied residents petitioned the State Board of Education in 2018 to transfer approximately nine square miles of land out of the Jefferson district and into the Valley View Local School District. More than 40 percent of eligible students already had "opted out of attending Jefferson schools," leaving roughly 300 students enrolled in the district; the state's "report card" routinely gave Jefferson very low ratings; the Auditor of State had found Jefferson's books "inauditable" for 2017; and it had become "difficult for Jefferson to

attract teachers because of its low pay and the fear that the district will cease to exist." Hearing Officer's January 7, 2019 Report and Recommendation at ¶ 32, 33, 36, 37, 40, 46. The state board's hearing officer recommended that the state board grant the transfer request. But Jefferson objected on a variety of grounds, and the state board, in light of the general "persuasiveness of Jefferson['s] * * * objections," voted 10-7 to reject that recommendation and disapprove the transfer. February 11, 2019 Board Minutes at 20. The petitioners took an administrative appeal to the Franklin County Court of Common Pleas, which overturned the decision of the state board and itself granted the transfer. Jefferson appeals from that judgment.

{¶ 2} We agree with the common pleas court that the state board did not fulfill its statutory obligation to identify the reason (or reasons?) for its disapproval of the hearing officer's recommendation. But in part because the board's rationale was so inchoate, and because the record could contain evidence that might support the state board's result depending on what the basis for it was, we will remand the case so that the common pleas court may return it to the state board for appropriate and appropriately reviewable disposition of the transfer petition.

**Procedural history**

{¶ 3} In March 2018, Megan Lucas and other concerned residents of the Jefferson school district petitioned the state board for the transfer of the roughly nine square miles of school district territory from Jefferson to Valley View pursuant to R.C. 3311.24. The Ohio Department of Education appointed a hearing officer to review the matter.

{¶ 4} In January 2019, after holding a two-day evidentiary hearing on the territory transfer request, the hearing officer issued her rather detailed report and recommendation. She found, among other things, that the proposed transfer area is owned by fewer than ten families and that of the 25 or so school-age children who live there, only "four or five of these children appear to attend Jefferson schools." Report and Recommendation at ¶ 18, 20-21. After critiquing Jefferson's performance ("[a]s of October 2018," for example, "Jefferson had not finalized its students' schedules for the 2018-2019 school year," *id.* at ¶ 43) and contrasting it unfavorably with Valley View's much better job on state report cards and graduation rates, she reviewed transfer factors identified in Ohio's Administrative Code and assessed the issues raised by the parties.

{¶ 5} "Valley View provides a better assortment of higher caliber classes and activities to its students than Jefferson does," she observed, and she gave "great weight" to the fact that "[t]he predominant [agricultural] vocation of the residents of the Territory [proposed for transfer] is not being addressed by Jefferson," which unlike Valley View does not offer agriculture classes and 4H programs. *Id.* at page 11. She also noted that "[n]o evidence has been presented that racial animus was a factor in this transfer request," and that Jefferson had stated that the transfer would not have more than a de minimis effect on the racial composition of its schools. *Id.* at 10-11. While "Jefferson claims an alleged tax revenue loss of $456,552.00 [annually] and an alleged valuation loss of $13,600.00 [sic: should be $13,600,000.00]," the district did not provide any "specific examples" of how that revenue loss would adversely affect its students, she said, and the district's 2017 revenues had outpaced its expenses by more than $800,000. *Id.* at 12.

{¶ 6} "Jefferson has been in overall disorder for many years," the hearing officer concluded, "even with the revenue from the Territory. * * * * [T]he decreasing student population, accounting issues and the turnover/retention of administration/staff have continued to be issues. This transfer will not change the issues that have challenged Jefferson." *Id.* at 14. On the other side of the equation, the residents proposing transfer "have been concerned about their children's educational opportunities for many years." And "[t]he educational opportunities available to the students in the Territory [at issue] * * * will be vastly improved by the granting of this transfer." *Id.* In sum, she recommended that the state board grant the petitioners' request. *Id.*

{¶ 7} Jefferson submitted objections to the hearing officer's report and recommendation, reciting that the transfer would have "immense emotional and financial impact * * * on Jefferson's stakeholders." Objections at 1. Among other things, and using what may seem odd locution for an educational enterprise, Jefferson argued that "petitioners * * * presented tangible evidence related to the best interest of **only two children** [sic, and emphasis in original] within the disputed territory." *Id.* at 2. The transfer would have racial isolation implications, they argued, and would not be in the best interests of the students remaining in the district; whether movement of students should be permitted must turn in part on those children's hypothesized race, the objections contended, because boundary changes affect students district-wide. *Id.* at 2-4. Moreover,

"Valley View would be acquiring over $450k in tax revenues while assuming the duty to educate 2 to 5 children. This disproportionality clearly does not weigh in favor of a transfer." *Id.* at 7. And "better educational programming in one district for two specific children is not 'overwhelming' evidence supporting the transfer [of] nine square miles of territory." *Id.* at 9.

{¶ 8} Jefferson's objections also noted that the district's superintendent had testified that revenue losses would result in programming cuts, and responses from the treasurer reflected a threat of hemorrhaging deficits. *Id.* at 10. Additionally, Jefferson submitted, petitioners had failed to explain "why nine square miles needs to be transferred when a much smaller transfer would accomplish the same alleged goal [of helping transferring students]." *Id.* at 11. As to agricultural offerings, "[t]here was no evidence presented regarding any courses taken by any specific students that would not be available should those students attend Jefferson or another district through open enrollment." *Id.* at 13. "Finally, the hearing officer did not even address proximity of the transferred property to the receiving school district, which is a factors [sic] set forth in OAC 3301-89-02(B)(13) and (14)." *Id.* (with map at 14).

{¶ 9} The state board met to consider the transfer petition on February 11, 2019. The minutes of that meeting reflect that after the recommendation was presented to the board, three individual board members advocated rejecting the hearing officer's recommendation and disapproving the transfer. Each of the three advanced different and separate reasons for that position: one "stated her main concern was that a segregated area would be even more segregated if the transfer were to be allowed," and also noted that "only four to five students would be affected in an almost nine-mile area"; one "noted the 14 percent loss of the budget"; and one "stated concerns with setting precedent [because] petitioners knew what district the house they purchased was in." February 11, 2019 State Board Minutes at 19.

{¶ 10} By a vote of 10-7, the board then voted to reject the recommendation of the hearing officer and disapprove the transfer "in light of the persuasiveness of Jefferson Local School District's objections." *Id.* at 20. The resolution itself contained no other explanation for the board's rejection of the hearing officer's recommendation. *Id.*

{¶ 11} The petitioners appealed the state board's determination to the Franklin County Court of Common Pleas pursuant to R.C. 119.12. With briefing complete, the trial court began its decision with a succinct procedural overview and observed that before "seeking the land transfer, [the petitioners had] attempted to work with the Jefferson School Board to improve the district, including one appellant serving on the school board." Decision and Entry at 1. The trial court then recited that R.C. 119.12(M) provides: "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of this finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law." *Id.* at 2-3 (then citing *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 212, 2008-Ohio-4826, for instructions including that while the court should give deference to agency findings of fact, the court itself determines questions of law).

{¶ 12} The trial court then turned to our decision in *Residents of Baldwin Rd. v. State*, 10th Dist. No. 02AP-257, 2002-Ohio-5522. As the trial court noted, *see* Decision and Entry at 3-4, we said there that "[w]hile the Board is not required to accept a referee's recommendation to grant or deny a requested transfer, when the Board rejects a recommendation, there is a presumption that only the specific grounds listed by the Board provided the basis for the decision, with other possible grounds being rejected. However, where nothing in the Board's resolution addresses or contradicts the referee's conclusion that the students would be better served by the transfer, the Board's decision is not supported by reliable, probative and substantial evidence." 2002-Ohio-5522 at ¶ 16, citing *Schreiner v. State Bd. of Edn.*, 10th Dist. No. 98AP-1251 (Nov. 9, 1999). The trial court continued by reciting that the state board's rejection of a hearing examiner's recommendation in *Baldwin Rd.* had been for an expressed reason that was appropriately overturned as "counter to evidence presented that showed the transfer [considered there] only affected one child and the economic impact was de minimis." Decision and Entry at 4.

{¶ 13} In this case, too, the trial court said, the state board "ignored the evidence found by the Hearing Officer supporting the transfer and instead relied on speculation and

non-statutory factors." *Id.* The trial court then noted that three (of the seventeen) voting board members each had voiced one (different) concern, and the trial court reviewed each and found each to lack any reliable, probative, and substantial support in the record. *Id.* at 4-6. "The Hearing Officer's decision was based on reliable, probative, and substantial evidence," the trial court concluded. *Id.* at 6. "Thus, without specific grounds addressing or contradicting the recommendation of the Hearing Officer, the Board's decision is not based on reliable, probative and substantial evidence." *Id.* The trial court reversed the order of the state board and proceeded to grant the territory transfer request. *Id.*

{¶ 14} Jefferson—but not the state board—appeals.

**Administrative scheme and standards**

{¶ 15} R.C. 3301.13 places the state board within the state department of education and makes it "subject to Chapter 119 of the Revised Code" relating to the administrative appeal process. Thus, a decision of the state board on an R.C. 3311.24 transfer request is appealable under R.C. 119.12. *See also, e.g., Rossford Exempted Village School Dist. v. State Bd. of Edn.*, 45 Ohio St.3d 356 (1989), syllabus.

{¶ 16} In reviewing an order of an administrative agency under R.C. 119.12, a common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110 (1980). As to questions of fact, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Id.* at 111. The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955).

{¶ 17} An appellate court's review of an administrative decision is more limited. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). While the common pleas court must examine the evidence, "[s]uch is not the charge of the appellate court." *Rossford*, 63 Ohio St.3d at 707. The appellate court is to determine only whether the common pleas

court abused its discretion. *Id.*; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218 (1983). On review of purely legal questions, including whether the common pleas court applied the proper standard of review, an appellate court exercises de novo review. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.); *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 343 (1992) ("it is the prerogative and the responsibility of the court entertaining the appeal to investigate whether the lower court accorded due deference to the factfinder").

{¶ 18} "R.C. 3311.24 itself contains little guidance for the state board's consideration of a petition for a transfer [of school district territory] under that statute," but more specific "standards, factors, and procedures for the administrative consideration of such a petition are contained in Ohio Adm. Code Chapter 3301-89." *Bartchy* at ¶ 44; *see also Concerned Citizens for Quality Edn. v. Ohio Dept. of Edn.*, 10th Dist. No. 10AP-569, 2011-Ohio-3081, ¶ 7. Ohio Adm.Code 3301-89-01 gives the state board's general policies regarding transfers of territory and confirms, at subsection (F), that "[a] request for transfer of territory shall be considered upon its merit with primary consideration given to the present and ultimate good of the pupils in the affected districts." Ohio Adm.Code 3301-89-02 outlines procedures for considering a petition for transfer of territory and sets forth 25 questions that each school district implicated by a requested transfer must answer to aid the state board in its consideration. Ohio Adm.Code 3301-89-03 contains a non-exhaustive list of further factors to be considered. "In supplying the overall standard for considering school district territory transfer requests, the Administrative Code focuses on educational impact as the key to whether such requests should be approved." *Bartchy*, 2008-Ohio-4826, at ¶ 86.

{¶ 19} " '[T]he several factors for consideration set forth in Ohio Adm. Code 3301-89-02(B) and 3301-89-03(B) are intended to be an integral part of the board's transfer decision with primary consideration given to the present and ultimate good of all the students who are affected by the proposed transfer.' " *Id.* at ¶ 50, quoting *Garfield Hts. City School Dist. v. State Bd. of Edn.*, 62 Ohio App.3d 308, 319 (10th Dist.1990). Each transfer request is decided on its particular facts under the required balancing test. *Bartchy* at ¶ 81. Thus, " '[w]hen a transfer of school districts is proposed, a balancing must take place between many competing factors in order to achieve the desired result of achieving what is

in the best interests of the students concerned.' " *Id.* at ¶ 51, quoting *Garfield Hts.* at 323. As we have held and the Supreme Court has reaffirmed, " '[b]ecause the good of the pupils must be the primary consideration of the board, by definition no other single factor may be determinative of the transfer request.' " *Bartchy* at ¶ 51, quoting *Cincinnati City Sch. Dist. v. State Bd. of Edn.*, 113 Ohio App.3d 305, 310 (10th Dist.1996). "[T]he hearing officer's [and ultimately the state board's] balancing of the factors should be treated with deference." *Id.* at ¶ 89.

### Discussion

{¶ 20} Jefferson assigns four asserted errors for our review:

> [1.] The trial court erred as a matter of law in failing to apply the correct standard of review of an administrative decision.
>
> [2.] The trial court abused its discretion by failing to review and/or address the evidence in the record regarding the financial impact of the transfer on the school district.
>
> [3.] The trial court abused its discretion by failing to review and/or address the evidence in the record regarding racial isolation.
>
> [4.] The trial court abused its discretion by failing to review and/or address the evidence in the record regarding disproportionality and proximity.

{¶ 21} Jefferson urges under its first assignment of error that "the trial court * * * did not consider the entirety of the record" in reaching its decision because it "concluded that the State Board had failed to adequately delineate its justifications for rejecting the hearing officer's recommendation." Appellant's Brief at 25. Jefferson then proceeds to argue, under its next three assignments of error, from what it says is evidence that would support what it now apparently distills as three of the more significant prongs of the objections that it had made to the hearing officer's recommendation and that the board (either on the basis of one objection or by combining two or more) had found "persuasive[ ]." *See id.* at 26 (citing "persuasiveness of objections"), 32-41 (starting with claimed 14 percent valuation loss to district).

{¶ 22} The state board resolution did not need to point to specific evidence to support a particular reason or set of reasons for rejecting the hearing officer's

recommendation, so long as the record in fact contained reliable, probative, and substantial evidence that could support an articulated board rationale.  In *Baldwin Rd.*, for example, the reviewing courts themselves examined the record and determined that the reason given by the state board for departing from the hearing officer's recommendation "was not" supported by substantial, reliable, and probative evidence.  *See* 2002-Ohio-5522, at ¶ 19 (further noting that board's articulated concern of burden to transferee school "was reached despite evidence that the property transfer would only affect a single child * * * and was likely not to affect significant numbers of future students").

{¶ 23} But the trial court's possible reluctance here to dig too deeply into the administrative record—as when, for example, it cited to the hearing officer's view that Jefferson had "presented no evidence or testimony to support their claim" of significant revenue loss, *see* Decision and Entry at 5, and did not cite to Jefferson's answers of record to responses 9 and 21 to the 25 questions (indicating a valuation loss of $13.6 million dollars, an annual revenue loss to the district of $456,552, and a projected doubling of projected deficit spending by the end of a five-year forecast period), or to the district treasurer's reaffirmation of those answers, *see* Petitioner's Ex. 2 and September 25, 2018 hearing transcript at 168—is quite understandable given the state board's failure to comply with Ohio law requiring it to include in the record its reasons for not following the hearing officer's recommendation.

{¶ 24} When it "modifies or disapproves the recommendations" of its hearing officer, the state board of education "shall include in the record of its proceedings the reasons for such modification or disapproval."  R.C. 119.09, as applicable pursuant to R.C. 3301.13.  That requirement is necessary to the system of appellate review, for "when the Board rejects a recommendation, there is a presumption that only the specific grounds listed by the Board provided the basis for the decision, with other possible grounds being rejected."  *Baldwin Rd.*, 2002-Ohio-5522, at ¶ 16, citing *Schreiner*, 10th Dist. No. 98AP-1251 (Nov. 9, 1999), 1999 Opinions, Vol. V, 4792.  As we have explained, there would not be "any point in allowing each reviewing body to make a decision completely independent of any preceding findings and conclusions.  Instead, the system envisions a series of checks and balances in which each reviewing body considers what has gone before with an eye for

the reasonability of the prior decision based upon all the facts presented and in light of the statutory requirements and factors." *Id.* at ¶ 17.

{¶ 25} The board as a body did not say what it found persuasive about the objections. *Id.* It did not specify whether it found one objection compelling, or more than one, and if so in what combination. *Id.* That is, it did not list or specify any particular objection to which it subscribed, or in any other way describe the reasons for its conclusion; it simply endorsed the overall "persuasiveness" of the objections as an undifferentiated group and in sum, and without more ruled against the transfer. *Id.*

{¶ 26} Jefferson submits to us that "the trial court should have presumed [that] the reasons supporting the State Board's decision were all those reasons set forth in Jefferson's objections." Appellant's Brief at 27 (emphasis in original). But given the guileful phrasing of the board's resolution and the limited discussion of record, no more than one board member is committed to any one of the objections, let alone all. By the same token, no member of the narrow board majority is committed to rejecting any one of the objections. *Compare Baldwin Rd.* at ¶ 16 ("presumption that only the specific grounds listed by the Board provided the basis for the decision, with other possible grounds being rejected"). This noncommittal approach runs directly counter to the accountability that R.C. 119.09 demands.

{¶ 27} Thus, we cannot tell from the board minutes and the resolution what the reasons for the board's disapproval were: all we really know is the 15-page filing of "objections" from which "persuasive[ ]" reasons were drawn. And especially because the legal analysis required of the trial court in assessing whether the record offered reliable, probative, and substantial evidence to support the board's determination might well vary depending on each particular reason examined, telling the trial court to "review the entire record" in the absence of a coherent board rationale would serve no productive purpose at this juncture. *Compare Schreiner* at page 13 ("the trial court should limit its review to two basic questions. First, are the *specified grounds* for the Board's decision supported by reliable, probative, and substantial evidence," and second, "are such grounds [as 'specified' by the board] legally sufficient to support the Board's determination?") (emphasis in original). So whereas in *Baldwin Rd.* the courts were able to scour the record and match evidence (or the lack thereof) against the state board's articulated rationale, here, where the

state board did not articulate a rationale as required by law but simply said that it yielded to the "persuasiveness" of Jefferson's rather diffuse, disparate, and perhaps disparately supported objections, that would have been something of a mug's game.

{¶ 28} If what made Jefferson's objections persuasive to the board were its race-based arguments, for example, that analysis would examine different record evidence, under different controlling legal authority, than would analysis of tax revenue loss, which would look to evidence different still from evidence concerning "proximity of some of the territory to Jefferson school buildings," or the relative breadth of the territory proposed for transfer. *See, e.g.,* Hearing Transcript at 148 (Jefferson Superintendent agrees that transfer of four or five students would have "de minimis" effect on racial composition of schools); May 16, 2018 "25 Questions" letter from Jefferson's counsel at 2 ("the transfer would not result in an increase in the percentage of minority pupils in the * * * district"); *id.* at Addendum A (claiming $456,522 annual tax loss); Hearing Transcript at 140 (superintendent says any loss of revenue would be significant to this district); *see also, e.g., Schreiner* at pages 20, 22 (where evidence of "racial isolation" supports "only * * * a conclusion that such an impact would be *de minimus*," that is not a valid reason for denying transfer); Appellant's Brief at 35 (conceding that Title VI of 1964 Civil Rights Act applies in this context); *Spitznagel v. State Bd. of Edn.*, 126 Ohio St.3d 174, 2010-Ohio-2715, ¶ 18 (state board's permissible weighing of generalized revenue loss in considering transfer is reviewed for abuse of discretion).

{¶ 29} But precisely because the trial court was correct in observing that the state board did not provide "specific grounds" for departing from the hearing officer's recommendation, *see* Decision and Entry at 6, we do not entirely understand the trial court's finding that the state board "relied on speculation and non-statutory factors in its decision," *Id.* at 4. The record is unclear as to *what* the board relied on (and this case in that way is very different from *Baldwin Rd.*).

{¶ 30} Moreover, and relatedly, the review of the entire record that the trial court purported nonetheless to undertake was phrased in places as relying on the hearing officer's conclusions (only) rather than on the fuller administrative record. *See supra* at ¶ 23 (regarding dispute as to the state of the evidence concerning revenue loss); Decision and Entry at 5 (citing only to hearing officer Report and Recommendation for proposition that

"[w]hile Jefferson claimed a 14% loss of tax revenue, they presented no evidence or testimony to support their claim"); *compare* Jefferson's responses to 25 questions. The board's failure to specify reasons does not (necessarily) mean that the board had no evidence on which it could have grounded a disapproval of the recommendations. This case therefore presents a problem quite different from the circumstance we found in *Baldwin Rd.*, where the board cited a rationale for its denial of a transfer contrary to a hearing officer's recommendation (" 'the transfer * * * is hereby DENIED because, if the transfer were approved, the facilities of the [school district] would be burdened and, consequently, the educational facilities of both districts would not be effectively utilized' "), but where the courts' examination of the full record showed that "the Board's resolution was not" supported by the evidence. 2002-Ohio-5522, at ¶ 7, 19.

{¶ 31} In these contrasting circumstances, we conclude that where a board governed by R.C. 119.09 "fails to set forth its reasons for modifying [or rejecting] the officer's recommendations, the Board's order is not in accordance with law" and must be overturned on that basis. *Wheat v. State Bd. of Chiropractic Examiners*, 9th Dist. No. 13538, 1988 Ohio App. Lexis 4859 (Nov. 30, 1988), citing *Chapman v. Ohio State Rental Bd.*, 33 Ohio App.3d 324 (9th Dist.1986).

{¶ 32} Our discussion in *Baldwin Rd.* emphasized the importance of the board's statutory obligation to include "the reasons" for disapproval as appropriately supported by evidence and "on grounds which are legally sufficient" to trump evidence supporting the hearing officer's recommendation. 2002-Ohio-5522, at ¶ 17 (emphasis omitted); R.C. 119.09. And the entire structure of our *Schreiner* decision that informed our views in *Baldwin Rd.* illustrates the significance to judicial review (and therefore to what both the legislature and the courts have deemed essential to good governance of the administrative process) of the need for the administrative record to reflect the board's stated reasoning in such circumstances (just as reviewing courts would have examined the hearing officer's report were the board to have adopted that).

{¶ 33} Such transparency serves as a check not only on the administrative body that must include its reasons, but also on the courts that are confined to examination of those actually stated reasons and the evidence underlying them, rather than being loosed to engage in judicial policy making as supported by any rationale that comes to hand. *See*

*Schreiner* at 13 ("the trial court did not limit its inquiry to a determination of whether the grounds specified by the Board were supported by the factual record and legally sufficient to support the Board's determination to deny the transfer. Rather, the trial court placed itself in the role of the Board by engaging in a complete reweighing of the evidence and regulatory factors and by coming to its own, independent conclusion as to the propriety of the transfer, albeit the same conclusion reached by the Board"), *id.* at 14-22 (then marching through each of the four grounds that actually had been specified by the board there, and finding that the trial court had abused its discretion in finding them supported by reliable, probative, and substantial evidence and in accordance with law).

{¶ 34} *Jackson v. Franklin Cty. Animal Control Dept.*, 10th Dist. No. 86AP-930, 1987 Ohio App. Lexis 9144 (Oct. 6, 1987), does not relieve the board of its obligation under R.C. 119.09 to provide the reasons for its disapproval of the hearing officer's recommendation. There, in that case involving the Ohio Civil Rights Commission, "the Attorney General, *in behalf of the commission*, filed objections" to part of the hearing examiner's recommendation. *Id.* at *6 (emphasis added). And those objections by the commission's own lawyer "suggested that reinstatement also be ordered" as part of the discrimination remedy. *Id.* So the reasons for the commission's order to that effect were "sufficiently included in the record." *Id.* That case relied on *Bd. of Edn. v. Civil Rights Comm.*, 66 Ohio St.2d 252, 257 (1981), where again the objections came from the Attorney General making one point (there, "that the examiner used an incorrect standard of proof"), and where the commission "accepted this contention in its conclusions of law" (and also made "findings of fact" as further reviewable by the courts). Here, quite unlike *Jackson*, the objections to which the board adverted were (1) diffuse and varied, and (2) were not made by the board's lawyer "in behalf of" the board, but rather came from a different party to the dispute entirely—the Jefferson school district, opposing the requested transfer. *Compare, e.g., State ex rel. Am. Legion Post 25 v. Ohio Civil Rights Comm.*, 117 Ohio St.3d 441, 2008-Ohio-1261, ¶ 9 (explaining that in Civil Rights Commission hearings, "the attorney general represents the commission and prosecutes the charge," citing R.C. 4112.05(B)(5) through (7) [involving statutory mechanisms specific to that commission, but not relevant to the board here]).

{¶ 35} In this case, the board in its failure to identify what *Baldwin Rd.* and *Schreiner* termed the "specific grounds" for its disapproval did not begin to approach what we have said is the minimal threshold for satisfying that R.C. 119.09 requirement. In *In re Meridia Euclid Hosp.*, 10th Dist. No. 93AP-138, 1993 Ohio App. Lexis 4054, *8 (Aug. 7, 1993), for example, we reviewed an order of the Certificate of Need Review Board reciting that it had " 'rejected the Hearing Examiner's Findings of Fact having determined that the submitted findings are contrary to statute. In conjunction with the Findings of Fact the Board rejected the Hearing Examiner's Conclusions of Law determining that the conclusions are flawed due to the fact that the Hearing Examiner placed the 'burden of proof' on the Appellees rather than on the Appellants.' " We held that with those two sentences, not lengthy or unduly arduous for the governmental body but nonetheless sufficient to convey rather precisely why that board had decided as it did, the "order *minimally satisfies* the requirements set forth in R.C. 119.09." *Id.* (emphasis added; saying, too, that "[u]ntil such time as the statutes require more from an agency, * * * *this barest of explanations* suffices"). *See also, e.g., In re Lima Memorial Hosp.*, 10th Dist. No. 93AP-580, 1993 Ohio App. Lexis 4184, *9 (Aug. 24, 1993) ("the board, in amending, deleting and adding its own finding of fact and conclusions of law, sufficiently set forth its reasons for disapproving the hearing examiner's recommendations").

{¶ 36} Because the board did not make its determination here in accordance with law, and because the trial court consequently was not in a position to compare the evidentiary record to reasons specified by the board and does not appear to have conducted a full review of the administrative record, we sustain Jefferson's first assignment of error only to that limited extent and remand the matter to the trial court for remand to the board for appropriate, reviewable consideration of the hearing officer's report and disposition of the transfer petition. *See, e.g., Wheat*, 1988 Ohio App. Lexis 4859, at *21 (where a board order is not in accordance with law because the board has failed to set forth its reasons for modification or disapproval, "the reviewing court may remand to the [b]oard," citing *Chapman*); *Chapman*, 33 Ohio App.3d at 328 ("[s]uch a remand does not dismiss or terminate the administrative proceeding but, rather, means that the agency may take a fresh look at the matter"); *In re Jefferson Health Care Center*, 10th Dist. No. 89AP-182, 1989 Ohio App. Lexis 3161, *12 (Aug. 15, 1989) ("R.C. 119.12 permits the common pleas

court to remand a case to an administrative body where its action did not conform with law," citing *Chapman*; *Demint v. State Med. Bd.*, 10th Dist. No. 15AP-456, 2016-Ohio-3531, ¶ 61 (citing *Chapman*).

**Conclusion**

{¶ 37} Remanding the matter to the board should enhance accountability, administrative transparency, and focused judicial review by permitting the board to comply, as it must if it decides to reject the hearing officer's recommendation, with the specification requirements of R.C. 119.09. In light of our ruling sustaining in part the first assignment of error and remanding this case to the trial court for remand to the board for further consideration of the report and land transfer petition, and because the board did not purport to rely on any one of the three reasons for overruling the hearing officer suggested in Jefferson's assignments of error two through four, we overrule those assignments as moot.

*Judgment reversed and cause remanded with instructions for remand to the state board of education for further determination.*

BEATTY BLUNT, J., concurs.
LUPER SCHUSTER, J., concurring in part and dissenting in part.

LUPER SCHUSTER, J., concurring in part and dissenting in part.

{¶ 38} While I concur in the majority's reversal of the trial court's judgment, I disagree with the majority's instructions to the trial court on remand. Therefore, I concur in part and dissent in part.

{¶ 39} The majority finds that the Ohio State Board of Education ("state board") did not comply with its obligation under R.C. 119.09 to set forth the reasons for its disapproval of the hearing officer's recommendation to grant the petition to transfer certain land from the Jefferson Township Local School District ("Jefferson") to the Valley View Local School District ("Valley View"). The majority concludes that this deficiency precluded the trial court from properly reviewing whether the administrative record supported the state board's reasons. Thus the majority remanded the matter to the state board "for appropriate, reviewable consideration of the hearing officer's report and disposition of the transfer petition." (Majority Decision at ¶ 36.) I disagree.

{¶ 40} The state board's denial of the requested transfer of territory from Jefferson to Valley View reflected both its disagreement with the hearing officer's balancing of all the pertinent factors in evaluating the request, and its conclusion regarding whether a transfer of the territory would best serve the ultimate good of the children concerned. The state board's resolution indicates that, upon considering the hearing officer's report and recommendation, the documents provided by the parties, and Jefferson's objections to the hearing officer's report and recommendation, it was persuaded by the objections. Accordingly, the state board denied the transfer request on that basis. *See Jackson v. Franklin Cty. Animal Control Dept.*, 10th Dist. No. 86AP-930, 1987 Ohio App. LEXIS 9144 (Oct. 6, 1987) (agency ruling in favor of party's objections that are contained in the administrative record complies with R.C. 119.09's requirement that the agency include in the record of its proceedings the reasons for disapproving of a hearing officer's recommendation). Jefferson's objections centered on the projected financial and racial impact of the requested transfer, and the prudence of transferring nine square miles of territory instead of a geographically more limited transfer. In support of its objections, Jefferson cited specific undisputed evidence that, according to it, favored the denial of the transfer. In other words, the objections provided a competing view of how certain evidence should be weighed in considering the factors pertinent to the transfer request. Thus, the state board accepted Jefferson's reasoning as to why, in balancing the applicable factors, the circumstances disfavored the approval of the territory transfer request. In my view, this met R.C. 119.09's requirement that the state board provide its reasons for disapproving the hearing officer's recommendation.

{¶ 41} Even though the state board complied with this requirement, there is no indication the trial court meaningfully reviewed the evidentiary basis of the state board's decision. For example, the objections emphasized that Jefferson would incur a 14 percent property tax revenue loss as a result of the territory transfer. Despite undisputed evidence in the administrative record of this revenue loss, the trial court cited the hearing officer's assertion that there was no evidence presented to support this level of revenue loss. I can only conclude that, instead of reviewing the entire administrative record, and the reasoning against the transfer set forth in the objections, which the state board found to be persuasive, the trial court focused its analysis on the hearing officer's discussion and weighing of certain

pertinent factors, including her discounting of evidence relating to the financial harm to Jefferson and the racial impact of the requested territory transfer. The underlying facts here were undisputed, and the state board viewed the significance of those facts differently than the hearing officer. While the trial court purported to review whether the state board's decision was supported by reliable, probative, and substantial evidence, it instead in effect deferred to the hearing officer's weighing of the evidence and imposed a requirement on the state board to offer evidence to refute the hearing officer's analysis.

{¶ 42} Consequently, I conclude the trial court erred as a matter of law in applying the wrong standard in its review of the state board's decision. I would instruct the trial court on remand to review the entire record to determine whether the state board's denial of the transfer request, which was necessarily based on its conclusion that approving the territory transfer request is not in the best interest of the children concerned, was supported by reliable, probative, and substantial evidence. Accordingly, unlike the majority, I would sustain Jefferson's first assignment of error in its entirety. On this basis, I agree with the majority that Jefferson's second, third, and fourth assignments of error are rendered moot.

{¶ 43} For these reasons, I concur in part and dissent in part.

_____