[Cite as *Henry v. Ohio Dept. of Pub. Safety*, 2026-Ohio-1581.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| CHARLES HENRY | : | |
| | : | C.A. No. 30604 |
| Appellant | : | |
| | : | Trial Court Case No. 2025 CV 00320 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| OHIO DEPARTMENT OF PUBLIC SAFETY | : | Court) |
| | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellee | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on May 1, 2026, the judgment of the trial court is reversed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

RONALD C. LEWIS, PRESIDING JUDGE

TUCKER, J., and HUFFMAN, J., concur.

**OPINION**

RYAN THOMAS, Attorney for Appellant
WILLIAM KOVALESKI, Attorney for Appellee

LEWIS, J.

{¶ 1} Plaintiff-appellant, Charles Henry, appeals from a judgment of the Montgomery County Common Pleas Court affirming the adjudication order of the Ohio Department of Public Safety ("ODPS"). For the following reasons, the judgment of the trial court is reversed.

## I. Facts and Procedural History

{¶ 2} Henry was the sole member and owner of Sentry Security Solutions, LLC, a licensed private investigation and security services company operating throughout Ohio. Because Henry occasionally performed armed duties in the course of his work, he was required to obtain a firearm bearer license in accordance with R.C. 4749.10. In September 2021, Henry completed a basic firearm training course with a semiautomatic handgun and obtained a valid certificate of completion. On March 1, 2022, pursuant to Henry's application request, the Private Investigator and Security Guard Services section of ODPS ("PISGS") issued Henry a firearm bearer identification card with semiautomatic and revolver designations.

{¶ 3} On February 28, 2023, PISGS received an application from Henry to renew his firearm bearer notation with a semiautomatic handgun and revolver designation. Along with his application, Henry included a certificate from the Ohio Peace Officer Training Commission ("OPOTC") showing Henry's successful completion on February 11, 2023, of

2

the Private Security Firearms Requalification Program ("Requalification"). According to the certificate, Henry used a semiautomatic handgun to complete the Requalification.

{¶ 4} On March 6, 2023, PISGS issued Henry an identification card with a firearm bearer notation with only a semiautomatic handgun designation. PISGS denied Henry's request for a firearm bearer notation with a revolver designation on the basis that Henry did not demonstrate that he had completed the basic firearms training course with a revolver. Henry resubmitted his application to obtain a revolver designation, arguing that Ohio law does not distinguish between revolvers and semiautomatic handguns for licensing purposes. Henry's request for a revolver designation was again rejected.

{¶ 5} Henry requested an administrative hearing to contest the denial of the revolver designation. At the hearing, PISGS presented testimony from Veronica Evans, the hearings coordinator in the Legal Office of ODPS, and Molly Seitz, the Licensing and Registration Administrator for PISGS. Henry presented testimony from Christy Clark, an Administrative Officer for PISGS, and Aleta Dodson, a Program Administrator in the PISGS Section. Henry also testified on his own behalf.

{¶ 6} According to the evidence presented at the hearing, PISGS is tasked with reviewing firearm bearer notation applications, which allow qualified registrants to carry a firearm in the course of their duties. There are three different firearm designations that an applicant can obtain: revolver, semiautomatic handgun, and shotgun. The application requires that the applicant undergo an FBI background check and submit an OPOTC certificate of completion for firearms training.[1] The OPOTC certificate is issued directly to

---

1. While OPOTC is responsible for overseeing the training requirements, curriculum, and certification standards, the Ohio Peace Officer Training Academy ("OPOTA") provides the training courses that satisfy the necessary OPOTC requirements. Thus, while some of the testimony referred to OPOTA, we use OPOTC for clarity.

the applicant from OPOTC following the applicant's successful completion of a qualifying firearms course. The certificate identifies the individual's name, where they completed the qualification course, the date the certificate was issued, and the date they must requalify, and the certificate designates the weapon or weapons with which they qualified. PISGS does not issue the certificate or have any involvement in the issuance of the certificates. The certificates issued by OPOTC use a letter system to designate successful completion with a particular weapon: "A" for semiautomatic handgun, "R" for revolver, and "S" for shotgun. The same certificate can bear multiple weapon certifications. Henry's certificate had only an "A" designation.

{¶ 7} In reviewing an application, PISGS simply looks at the certificate that is issued from OPOTC to see whether it supports the issuance of a firearm bearer notation. PISGS's policy to accept or reject applications for firearm bearer notations was taught to employees verbally. Although there were some written operating procedures, none of them were introduced at the hearing.

{¶ 8} PISGS relied on OPOTC to properly categorize firearms designations on the certificates. The firearm bearer notification Henry received in 2022 was for both a semiautomatic and a revolver designation even though his certificate indicated he successfully completed the firearm training with only a semiautomatic handgun. According to PISGS, the revolver designation must have been a computer glitch because Henry should not have received a revolver designation.

{¶ 9} Henry testified to and submitted a copy of the private security semiautomatic pistol proficiency testing records for qualification in the basic firearm course. He likewise testified to and submitted a copy of the private security revolver proficiency testing records. In comparing the two exams, there were virtually no differences apart from a slight deviation

4

in the student performance Objective 4, which required the student to check, clear, and load a semiautomatic handgun as opposed to a double-action revolver. A student taking the private security basic course operated and handled both types of handguns. The written examination for both the basic training program and the requalification program was the same for a revolver and a semiautomatic handgun.

{¶ 10} The private security basic training manual issued to instructors and commanders applied to both certification and recertification training programs. It was developed by OPOTA and approved by OPOTC. In the manual, Unit 9 listed Topic 1 as "Revolver" and Topic 2 as "Semi-Auto" with a stated student goal of "demonstrat[ing] proficiency with a pistol." Even though there were two topics listed, the lessons were the same. Page 13 of the manual stated that weapon-specific endorsements were required for each individual platform, which were identified as "handgun, revolver, shotgun." The firearm platform designations were chosen by OPOTA, but page 14 listed the definition of "handgun" stated in R.C. 2923.11, which provides that a handgun is "[a]ny firearm that has a short stock and is designed to be held and fired by the use of a single hand" and "[a]ny combination of parts from which a handgun can be assembled." Page 24 stated that despite the type of firearm a student brought to class, either a revolver or a semiautomatic handgun, the same instructions were provided. According to Henry, the training, written examination, and firing range examinations did not differ between a revolver and a semiautomatic handgun.

{¶ 11} Following the hearing, the hearing examiner recommended upholding and sustaining the PISGS decision to deny Henry's request for a firearm bearer notation with a revolver designation. Despite Henry's objection, the hearing examiner's recommendation was adopted in an adjudication order issued by ODPS on January 10, 2025.

**{¶ 12}** Henry filed an administrative appeal to the Montgomery County Common Pleas Court pursuant to R.C. 119.12, asserting that the ODPS order was not supported by reliable, probative, and substantial evidence and was not in accordance with law. The trial court affirmed ODPS's order. The trial court concluded that the legislature intended to require separate training and certification for each type of firearm, including revolvers and semiautomatic handguns. The court found that compliance with the statutory requirements also required the completion of the requirements in the Ohio Administrative Code. Because Henry obtained only certification with a semiautomatic handgun, he could receive a firearm bearer notation for only that type of firearm. Henry timely appealed.

## II.     Law and Analysis

**{¶ 13}** Henry raises the following three assignments of error:

The trial court erred in applying R.C. 2506.04 rather than R.C. 119.12 as the standard of review.

The trial court abused its discretion under both R.C. 2506.04 and R.C. 119.12 by affirming the Ohio Department of Public Safety's Adjudication Order with identifying the evidence it deemed reliable, probative, and substantial.

The trial court erred as a matter of law by relying exclusively on Adm.Code 109:2-3-10(A) and Adm.Code 4501:7-1-22 rather than considering the applicable statutory authority under R.C. 4749.10.

**{¶ 14}** Henry's three assignments of error relate to the trial court's decision to affirm ODPS's adjudication order denying Henry's application for a revolver designation on his firearm bearer license. First, the trial court reviewed the appeal under the standard of review for administrative appeals under R.C. 2506.04 rather than R.C. 119.12, which Henry claims requires reversal. ODPS does not dispute that the trial court erred in applying the

6

wrong standard of review. However, ODPS contends that the standards of review are substantially similar. ODPS argues that the trial court's erroneous application of a higher standard of review constitutes harmless error because the error was to Henry's benefit and did not affect his substantial rights.

{¶ 15} Henry further argues, in the alternative, that even if the trial court's review under R.C. 2506.04 is not reversible error, the trial court's judgment is reversible because it failed to identify the evidence it deemed reliable, probative, and substantial, or to make the requisite credibility and weight determinations. ODPS responds that the trial court noted the relevant evidence from the administrative hearing that it weighed in reaching its decision sufficiently enough to satisfy the statutory requirements.

{¶ 16} Finally, according to Henry, the plain language of R.C. 4749.10(A)(1) does not distinguish between revolvers and semiautomatic firearms. Nor does the statute allow ODPS to subclassify handguns and require additional training or licensing not contemplated in the plain language of the statute.

{¶ 17} According to ODPS, PISGS has three different firearm designations for firearm bearer licenses: revolvers, semiautomatic handguns, and shotgun. These designations are not identified in R.C. 4749.10, but the requirements for firearms training certification are decided by OPOTC, not PISGS. OPOTC certifies the firearms training programs in accordance with the applicable statutes and rules promulgated by the attorney general. Adm.Code 109:2-3-10 states that a class A licensee wanting to go armed while on duty must "complete a basic firearms training course which includes a minimum of twenty hours of training *in each handgun to be used* ." (Emphasis added.) In accordance with that rule, certificates generated by OPOTC designate separate certifications for semiautomatic handguns, revolvers, and shotguns. PISGS contends that Henry cannot receive a revolver

7

designation without first obtaining a certification with a revolver, and PISGS lacks discretion to grant him that notation without the proper certification from OPOTC.

### A. Standard of Review

{¶ 18} The January 10, 2025 adjudication order issued by ODPS was an order of an agency denying Henry the issuance or renewal of a firearm bearer notation with a revolver designation. R.C. 119.12 governs appeals of a party adversely affected by any order of an agency "denying the issuance or renewal of a license or registration of a licensee [or] revoking or suspending a license." R.C. 119.12(B)(1). Accordingly, R.C. 119.12 applied.

{¶ 19} The standard of review for an R.C. 119.12 appeal is stated in R.C. 119.12(N), which provides in pertinent part:

> The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of this finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.

{¶ 20} The review by the common pleas court of an administrative agency decision requires "a hybrid factual/legal inquiry and a purely legal inquiry." *Bartchy v. State Bd. of Edn.*, 2008-Ohio-4826, ¶ 37. In performing this review, "an agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable." *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471

8

(1993). As for the legal inquiry, "questions of law must be reviewed de novo to determine whether the administrative order is in accordance with law." *Salgado v. Montgomery Cty. Sheriff*, 2015-Ohio-3387, ¶ 6 (2d Dist.), citing *Anguiano v. Ohio Dept. of Edn.*, 2014-Ohio-2810, ¶ 6 (2d Dist.), citing *Bartchy*.

{¶ 21} An appellate court's review is more limited than that of the trial court. In reviewing the trial court's determination on whether the order was supported by reliable, probative, and substantial evidence, the appellate court is limited to determining whether the trial court abused its discretion. *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261 (1988). When reviewing whether the agency's or the trial court's order was in accordance with the law, an appellate court's review is de novo. *Spitznagel v. State Bd. of Edn,* 2010-Ohio-2715, ¶ 14.

### B. Statutory Scheme for Obtaining a Firearm Bearer Notation

{¶ 22} "R.C. Chap. 4749 governs licensing of private investigators and security services and, per R.C. 4749.02, is administered by the director of public safety." *State v. Weaver*, 2025-Ohio-2256, ¶ 16 (2d Dist.). "Under R.C. 4749.01, firearm license holders are separated into three classes – A, B, or C – depending on whether they are engaging in the business of private investigation, security services, or both." *Id*. Pursuant to R.C. 4749.10, a class A licensee, such as Henry, shall not carry a firearm in the course of engaging in the business of private investigation, security services, or both businesses, unless certain requirements are satisfied. In order to go armed while on duty, one must obtain a firearm bearer notation, which requires that the licensee successfully complete a basic firearm training program at a training school approved by OPOTC, "which program includes twenty hours of training in handgun use and, if any firearm other than a handgun is to be used, five hours of training in the use of other firearms," and obtain "a certificate of satisfactory

9

completion of that program from the executive director of the [OPOTC]." R.C. 4749.10(A)(1). The licensee must then submit an application to the director of public safety, on a form prescribed by the director. R.C. 4749.10(A)(2). The application must be accompanied by a copy of the OPOTC approved certificate, any identification card previously issued under R.C. 4749.03 or 4749.06, a statement of the duties that will be performed while the licensee is armed, and the required fee. *Id*. The public safety director also receives an FBI background check for the applicant. R.C. 4749.03(C)(2). Upon successful application, the licensee receives a notation on the licensee's identification card indicating that the licensee is a firearm bearer. R.C. 4749.10(B)(1).

{¶ 23} A class A licensee must requalify annually on a firearms range. R.C. 4749.06(D). The requalification in firearms use must be completed on a firearms training range at a firearms requalification program certified by the OPOTC or on a firearms training range under the supervision of an instructor certified by the OPOTC. R.C. 4749.10(A)(4). Upon successful completion, the licensee receives a certificate of satisfactory requalification from the certified program or certified instructor. *Id*. "The certificate shall identify the licensee or employee and indicate the date of the requalification." R.C. 4749.10(B)(2). At the time that the licensee makes application for renewal of the licensee's class A license, the licensee shall submit a copy of the requalification certificate. *Id*.

{¶ 24} PISGS, a division of ODPS, reviews applications filed pursuant to R.C. 4749.10 and determines if the applicant meets all the applicable requirements to obtain a firearm bearer notation. OPOTC, a division of the Ohio Attorney General's office, is the administrative body charged with the oversight and implementation of the training and curriculum for the firearms certifications of private investigators and security services.

10

PISGS is not involved in the curriculum or approval of OPOTC's firearms certifications or requalification certifications.

**{¶ 25}** Adm.Code Chapter 4501:7-1 governs the issuance of licenses by the Ohio Department of Public Safety. Adm.Code 4501:7-1-22, which addresses firearm bearer notation issuance and renewal, states, in relevant part: "A firearm bearer notation may be renewed by submitting a 'Firearm Bearer Notation Application' accompanied by the fee provided for in section 4749.10 of the Revised Code, and submitting a certificate of satisfactory requalification for each type of firearm the person intends to carry."

**{¶ 26}** Pursuant to R.C. 109.78(B)(1), the executive director of the OPOTC, in accordance with rules promulgated by the attorney general, certifies the basic firearms training program and issues certificates to those registrants who satisfactorily complete the basic firearms training program. The Ohio Attorney General adopted Adm.Code 109:2-3-10(A), which states, in relevant part:

> Persons holding positions listed in section 109.78 of the Revised Code in which such persons go armed while on duty shall successfully complete a basic firearms training course which includes a minimum of twenty hours of training in each handgun to be used, and, if the shotgun is to be used, a minimum of five hours of training in the use of the shotgun. In order to successfully complete this course of instruction, a student must pass each student performance objective outlined in the commission-approved basic firearms course. Failure to pass any objective results in failure of the course.

### C. Analysis

**{¶ 27}** In affirming ODPS's decision, the trial court applied the standard of review in R.C. 2506.04 rather than R.C. 119.12, which was error. Nevertheless, because the primary

issue on appeal is an issue of law, which we review de novo, we need not consider the implications of the trial court's application of an incorrect standard of review. Moreover, the evidence in this case is not in dispute. Instead, the primary question in this appeal is whether ODPS's decision is contrary to law. This is, again, reviewed de novo. We begin our analysis with Henry's third assignment of error, which is dispositive of this case.

{¶ 28} This case involves the interpretation of a statute, which is a purely legal question, and is reviewed de novo. *Salgado,* 2015-Ohio-3387, at ¶ 6 (2d Dist.). "In construing a statute, our paramount concern is legislative intent." *State ex rel. Musial v. N. Olmsted*, 2005-Ohio-5521, ¶ 23, citing *State ex rel. United States Steel Corp. v. Zaleski*, 2003-Ohio-1630, ¶ 12. "The principles of statutory construction require courts to first look at the specific language contained in the statute, and, if the language is unambiguous, to then apply the clear meaning of the words used." *Roxane Laboratories, Inc. v. Tracy*, 75 Ohio St.3d 125, 127 (1996), citing *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105-106 (1973). A court must give effect to the words used in a statute without deleting or adding any words. *Pearn v. DaimlerChrysler Corp*., 2002-Ohio-3197, ¶ 63, citing *Lesnau v. Andate Ent., Inc*., 93 Ohio St.3d 467, 471 (2001).

{¶ 29} R.C. 4749.10(A) states that no class A licensee "shall carry a firearm, as defined in section 2923.11 of the Revised Code," unless certain requirements are met. A "firearm" is defined in relevant part as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11(B)(1). "Handgun" is also defined in R.C. 2923.11, which states that a "handgun" means any of the following:

(1) Any firearm that has a short stock and is designed to be held and fired by

the use of a single hand;

12

(2) Any combination of parts from which a firearm of a type described in division (C)(1) of this section can be assembled.

R.C. 2923.11(C)(1) and (2). Both revolvers and semiautomatic handguns qualify as "handguns" according to the definition in R.C. 2923.11(C).

{¶ 30} In order to obtain a firearm bearer notation, a licensee must successfully complete a basic firearm training program at a training school approved by OPOTC, "which program includes *twenty hours of training in handgun use* and, if any firearm *other than a handgun* is to be used, five hours of training in the use of other firearms," and must obtain "a certificate of satisfactory completion of that program from the executive director of the [OPOTC]." (Emphasis added.) R.C. 4749.10(A)(1). This certificate must then be submitted as part of the application to the director of public safety for a firearm bearer notation. "The director of public safety shall register an applicant under division (A) of this section who satisfies divisions (A)(1) and (2) of this section, and place a notation on the applicant's identification card indicating that the applicant is a firearm-bearer and the date on which the applicant completed the program described in division (A)(1) of this section." R.C. 4749.10(B)(1). Class A licensees must also requalify in firearms use annually and submit a certification of satisfactory requalification at such time the licensees apply for renewal of the licensee's class A license. PISGS employees explained that in reviewing firearm bearer applications, they merely verified whether the requirements were satisfied to grant or deny the application. PISGS grants firearm bearer notations for either a semiautomatic handgun, revolver, or shotgun based on the designation given on the certifications issued by OPOTC.

{¶ 31} Although the director of public safety is responsible for the licensing aspect of a firearm bearer notation, OPOTC is responsible for certifying the basic firearms training

13

programs that the class A licensees must complete. The executive director of the OPOTC, on behalf of the commission and in accordance with rules promulgated by the attorney general, certifies the basic firearms training programs and issues the certificates upon satisfactory completion of the training program or the requalification training program. R.C. 109.78. The administrative rules, not the Revised Code, require individuals who wish to go armed while on duty, such as Henry, to "successfully complete a basic firearms training course which includes a minimum of twenty hours of training *in each handgun to be used*, and, if the shotgun is to be used, a minimum of five hours of training in the use of the shotgun." (Emphasis added.) Admin.Code 109:2-3-10. While generally tracking the language of R.C. 4749.10, the administrative rule added the word "each" to the requirements. Thus, rather than completing one twenty-hour course in handgun use, an individual must separately complete a twenty-hour course in *each* handgun to be used, i.e., a revolver and a semiautomatic handgun. Although this additional twenty hours of training is not required by the Revised Code, ODPS uses the differentiation created in the training programs by the OPOTC to grant or deny a firearm bearer notation designation.

{¶ 32} "Administrative rules are designed to accomplish the ends sought by the legislation enacted by the General Assembly." *Hoffman v. State Med. Bd. of Ohio*, 2007-Ohio-2201, ¶ 17, citing *Carroll v. Dept. of Adm. Servs*., 10 Ohio App.3d 108, 110 (10th Dist. 1983). "Rules promulgated by administrative agencies are valid and enforceable unless unreasonable or in conflict with statutory enactments covering the same subject matter." *State ex rel. Curry v. Indus. Comm*., 58 Ohio St.2d 268, 269 (1979), citing *State ex rel. DeBoe v. Indus. Comm*., 161 Ohio St. 67 (1954), paragraph one of the syllabus. Administrative rules may not add to or subtract from the legislative enactment. *Cent. Ohio*

*Joint Vocational School Dist. Bd. of Edn. v. Ohio Bur. of Emp. Servs.*, 21 Ohio St.3d 5, 10 (1986). "[A] rule is invalid where it clearly is in conflict with any statutory provision." *Id.*

{¶ 33} R.C. 4749.10 does not mention a distinction between a revolver designation and a semiautomatic handgun designation. Rather, the language is plain and unambiguous in that the class A licensee must successfully complete the basic firearm training program, which includes "twenty hours of training in handgun use." The definition of handgun, as defined in R.C. 2923.11(C), includes both revolvers and semiautomatic handguns. The General Assembly was aware of this definition when it enacted R.C. 4749.10. The only additional training hours included in R.C. 4749.10(A)(1) involves a class A licensee who wishes to use "any firearm *other than a handgun*" as part of their business, in which case, they must obtain an additional five hours of training in the use of other firearms. Had the General Assembly intended for an additional twenty hours of training for *each* type of handgun to be used, it could have specified that in the statute, just as it required additional training for any firearm "other than a handgun."

{¶ 34} We conclude that the common pleas court erred when it determined that the legislature intended to require additional training and certification for the two different types of handguns. Thus, we conclude that the trial court's decision was contrary to law. R.C. 4749.10 is unambiguous and requires a class A licensee to successfully complete a basic firearm training program at a training school approved by the OPOTC or equivalent certification, which includes 20 hours of training "in handgun use," and receive a certificate of satisfactory completion of that program from the executive director of the commission. A "handgun" by statutory definition, includes both a revolver and a semiautomatic handgun. Therefore, successfully completing the program and obtaining a certificate of satisfactory completion of that program is all that is required, regardless of whether the handgun training

was completed with a revolver or a semiautomatic handgun. ODPS does not have the authority to impose an additional 20 hours of training that is not required by the Revised Code. If the General Assembly wants to impose additional training requirements for specific handguns, it can do so through the legislative process.

{¶ 35} Finally, ODPS's reliance on Adm.Code 4501:7-1-22 is misplaced. In addressing the application process for licensees applying for a firearm bearer notation, Adm.Code 4501:7-1-22(A)(4) provides that

> if the applicant intends to carry a firearm other than a handgun, the applicant shall submit a certificate of satisfactory completion of a minimum of five hours of training in the use of the other type of firearm from an OPOTC approved training program. Such certificate [must] be submitted for *each type of firearm* the applicant intends to carry.

(Emphasis added.)

{¶ 36} ODPS contends that the language "each type of firearm" refers to the subcategorization of handguns. We do not agree. The plain language of Adm.Code 4501:7-1-22(A)(4) requires a separate certificate for each type of firearm *other* than a handgun that the applicant intends to carry.

{¶ 37} While this court appreciates that there are differences between a revolver and a semiautomatic firearm, the firearm training program curriculum includes training in both types of handguns regardless of which handgun notation the applicant seeks. It is unreasonable to require a class A licensee, such as Henry, to complete an additional 20 hours of the same training he has already completed in order to obtain an additional firearm bearer notation for a revolver, as ODPS suggests. ODPS may not impose additional

16

internal requirements that are in conflict with the Revised Code's plain language, even if it based these additional requirements on a good faith interpretation of Adm.Code 109:2-3-10.

{¶ 38} Henry's third assignment of error is sustained.   Based on our resolution of the third assignment of error, Henry's first and second assignments of error are overruled as moot.   App.R. 12(A)(1)(c).

### III.   Conclusion

{¶ 39} Having sustained the third assignment of error, we reverse the trial court's judgment.

. . . . . . . . . . . . .

TUCKER, J., and HUFFMAN, J., concur.